61    9
83    255

ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY
COMPANY *v.* STATE.

Opinion delivered June 15, 1895.

RAILWAY COMPANIES—SEPARATE DEPOT ACCOMODATIONS.—An indictment of a railway company for failure to provide separate waiting rooms for the accommodation of the white and African races at a certain depot will not be supported by evidence which shows that the alleged depot was a mere flag station without any building belonging to or used by the company as a depot, although there was on the company's right of way a storehouse not under the company's control, to which passengers, when detained, usually resorted, and at which tickets were sold for the railroad company on commission.

Error to Drew Circuit Court.

M. L. HAWKINS, Judge.

STATEMENT BY THE COURT.

The appellant company was indicted in the Drew circuit court at its February term, 1894, for an alleged violation of what is known as the "Separate Coach Act," approved February 23, 1891, amended April 1, 1893.

The indictment is as follows, to-wit : "The grand jury of Drew county, in the name and by the authority of the state of Arkansas, accuse the St. Louis, Iron Mountain & Southern Railway Company of the crime of failing to provide separate waiting rooms for the white and African races, committed as follows, to-wit: The St. Louis, Iron Mountain & Southern Railway Company, in the county and state aforesaid, on or about the 1st day of May, A. D. 1893, the said railway company being then and there a railway company carrying passengers in their coaches in said county and state, and had so been for more than twelve months prior to May 1, 1893, did then and there unlawfully, and for more

than twelve months prior thereto, fail to provide sepa-
rate waiting rooms for the accommodation of the white
and African races at Wilmar depot, the said Wilmar
depot being then and there a passenger depot, operated
and maintained by said railway company on the 1st day
of May, 1893, and for each and every day for twelve
months prior thereto in said county and state, contrary
to the statute in such cases made and provided, and
against the peace and dignity of the State of Arkansas.

                          H. W. WELLS,
                                    Prosecuting Attorney."

The railway company demurred to the indictment,
because the same did not set up facts sufficient to consti-
tute a criminal offense against the laws of Arkansas.
The demurrer was argued and overruled, and all proper
exceptions duly saved. A plea of not guilty was then
entered, and the cause proceeded to trial.

In brief, the facts were as follows, to-wit: The
company had no depot building of any kind at Wilmar
on the first of May, 1893, nor prior to that time, and
had, of course, no waiting room of any character. It
was a flag station, and passengers got off and on the
cars there, as is usual at such places, and, when de-
tained there, usually resorted to a storehouse on the
company's right of way, near by, owned and occupied
by one of the witnesses as a storehouse and post office,
and where also he (the owner) sold passenger tickets for
the railway company on commission. He had built his
storehouse on the right of way, by permission of the
Little Rock, Mississippi River & Texas Railway Com-
pany, the predecessor of the appellant company. and at
and until the time referred to in testimony was occupy-
ing the ground by permission merely, the railway com-
pany having no interest in him or his business, other
than as stated above.

The station was one of little business, as the monthly income from all sources is shown to have been between $35 and $50, say on an average, not exceeding $45. It is 8 miles from Warren, and 10 miles from Monticello, and about 1½ miles from another similar station called "Allis."

The case was submitted to the court sitting as a jury, and the court rendered a verdict of guilty against defendant, and imposed a fine of $100; and defendant, reserving exceptions, appeals to this court.

*Austin & Taylor* and *Dodge & Johnson* for appellant.

1. The indictment charges no offense; it does not follow the language of the statute. 47 Ark. 488; 30 *id.* 496; 1 Bish. Cr. Pr., (3d ed.), sec 618; 59 Ark. 243.

2. Under the evidence, the verdict cannot stand. Sandels & Hill's Digest, sec. 6219, only contemplates that separate waiting rooms shall be provided *at all points* where the railway company *had or maintained* a "passenger depot." It does not purport to compel railway companies to erect passenger depots at all stations along their lines. This is the only reasonable construction. Endlich, Int. St., sec. 17. For definition of "depot," see Webster's Dictionary; 37 Conn. 153. There is no law in this state compelling railroads to erect passenger depots along their lines. The law requires separate waiting rooms only where there were depots already erected. 29 A. &. E. Ry. Cases, 481; 22 *id.* 500; 28 Ark. 361-2; 48 *id.* 155; Suth. Stat. Const. secs. 390-1-2-3.

*E. B. Kinsworthy*, Attorney General, for appellee.

1. The indictment was good. Sandels & Hill's Digest, secs. 2073, 2076; 49 Ark. 499; 55 *id.* 532; 54 *id.* 492.

2. The evidence is sufficient, under section 6219 Sandels & Hill's Digest. Wilmar was a passenger depot. 37 Conn. 153; 21 Wis. 79; Winfield, Adj. Words, etc., 188; 128 Ill. 163. The law makes no exceptions. Suth. St. Const., pp. 427, 325.

BUNN, C. J. (after stating the facts.) Both in overruling defendant's demurrer to the indictment, and in the trial of the cause, the court below proceeded on the theory that the statute referred to requires of railroad companies that they erect passenger depot buildings at all points on their roads where passengers are allowed to get off and on their trains; or else that the storehouse referred to in evidence was a "passenger depot," as contemplated within the meaning of the act.

The proof showed Wilmar to be nothing more than a flag station, without any building whatever belonging to or under the control of defendant, or used by it as a depot building, and this mere flag station is denominated in the indictment a "passenger depot."

The statute under consideration cannot be construed so as that it requires of railroad companies to erect passenger depot buildings where they have none, but the requirement is that they provide separate waiting rooms in their depot buildings already existing or to be erected; and the expression "passenger depot," as employed in the act, means a depot building used for the reception of passengers.

If the words "passenger depot," as descriptive of the depot at Wilmar in the indictment, were intended to mean a mere place where passengers were allowed to get on and off the trains, without any reference to the buildings connected therewith, then the demurrer should have been sustained; but if the words in the indictment had reference to the storehouse mentioned in the evidence, then the verdict was not sustained by the

evidence, for the storehouse was not a depot building, and was not owned, used or occupied by defendant as such.

The judgment is therefore reversed, and the cause remanded for further proceedings in accordance herewith.